UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BEAZLEY FURLONGE LTD on Behalf of CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, doing Business as Syndicates 623 and 2623<br><br>Plaintiffs,<br><br>v.<br><br>GATEWAY AMBULANCE SERVICE, LLC; AMIE WILSON LEPSKY; DAVID SPALINGER; JAN H. FREEMAN; Individually and as Personal Representative and Guardian of JEAN ROBERT NAST<br><br>Defendants. | Case No: 15-918<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff, by and through undersigned counsel, brings this Action for Declaratory Relief pursuant to 28 U.S.C. § 2201 for a Declaration of rights under the attached policy of insurance and for breach of contract and for it Complaint against Defendants, states as follows:

### THE PARTIES

1. Beazley Furlonge LTD is the Managing Agency for Syndicates 623 and 2623 at Lloyd's, London ("Underwriters" or "Beazley") incorporated in England and Wales and existing under the laws of the United Kingdom, with principal offices in London, United Kingdom. Beazley underwrote a Miscellaneous Medical Professional Liability Policy No. W15LTV10021 issued to PROCARENT f/k/a Louisville Transportation Company, in Louisville, Kentucky (the "Policy").

2. Gateway Ambulance Service, LLC is a Kentucky limited liability company whose principal place of business is in Louisville, Kentucky, with operations elsewhere, including St. Louis, Missouri. Upon information and belief, all of Gateway Ambulance Service, LLC's members are residents of Kentucky.

3. Amie Wilson Lepsky is an individual that, upon information and belief, is and was an employee of Gateway Ambulance Service, LLC, domiciled and residing in Missouri.

4. David Spalinger is an individual that, upon information and belief, is and was an employee of Gateway Ambulance Service, LLC, domiciled and residing in Missouri.

5. Jan H. Freeman is an individual that, upon information and belief, is domiciled and residing in St. Louis, Missouri and is the Guardian of Jean-Robert Nast.

## JURISDICTION AND VENUE

6. This Court has personal jurisdiction over each of the defendants as each of the defendants are domiciled, residing, and/or doing business in St. Louis, Missouri.

7. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1332. There is diversity of citizenship between plaintiff, organized under the Laws of England and Wales with its principal place of business in London, United Kingdom, and defendants, all of whom are citizens of Missouri and/or Kentucky. And the amount in controversy exceeds the $75,000 jurisdictional minimum.

8. Pursuant to 28 U.S.C. § 1391 the Eastern District of Missouri is a proper venue for this action because defendants are domiciled, reside, and/or do business here and/or because "a substantial part of the events or omissions giving rise to the claim" occurred here.

## UNDERLYING FACTS

### The Policy

9. Beazley issued a Miscellaneous Medical Liability Policy to PROCARENT f/k/a Louisville Transportation Company, in Louisville, Kentucky, with a policy period from October 1, 2010 to October 1, 2011 (the "Policy"). By endorsement to the Policy, Gateway Ambulance Service, LLC is a Named Insured. The Policy provides a Limit of Liability of $1,000,000 Each Claim Subject to a $25,000 Each Claim Deductible,. These limits are, by the Policy's express terms, inclusive of defense attorney's fees and costs.

10. The Policy provides that Underwriters has the right and duty to defend certain defined losses arising out of claims made against insureds, but will consult with the insured on the selection of defense counsel. The specific circumstances to which the Policy applies are set forth in the Policy and relevant endorsements, an accurate copy of which is attached hereto as Exhibit A, and its terms and conditions are incorporated by reference here as if fully set forth herein.

### The July 1, 2011 Incident

11. On July 1, 2011, 26-year-old quadriplegic Jean Robert Nast was transported from Saint Louis University Hospital to his home by Gateway Ambulance. Typically, a lift attached to his home was used to transport him in and out of the building but, that day, the lift was not functioning and/or his caretaker was unable to operate it. In the course of attempting to operate the lift Gateway's personnel moved Mr. Nast's stretcher. The wheels encountered an uneven area, and the stretcher tipped over. Mr. Nast was injured as a result and immediately transported back to Saint Louis University Hospital by Gateway personnel.

### The Prior March 2006 Incident

12.     While Mr. Nast sustained injuries in the July 1, 2011 Incident resulting in substantial medical treatment, he did not become a quadriplegic due to the July 1, 2011 Incident. He was already in that condition due to fractures of the C1-C3 vertebrae following a motor vehicle accident in March 2006.

### Beazley's Defense of Gateway RE The July 1, 2011 Incident

13.     Beazley was notified of the July 1, 2011 Incident on July 6, 2011. By July 18, 2011, after consulting with Gateway about the subject of defense counsel selection, the firm of Lashley & Baer P.C. and attorney Stephen Reuter was retained to defend Gateway and its employees against Mr. Nast's claim arising out of the July 1, 2011 Incident. *E.g.*, July 14, 2011 Email from Beazley to Gateway ("Hi Jeff, I was hoping to speak with you regarding a new claim (Jean Robert Nast) out of St. Louis Mo. I was advised that there was a letter from an attorney and I wanted to discuss retaining counsel on this case … Let me know when you would have time today or tomorrow to discuss. I hope all is well.") In correspondence dated July 21, 2011 Beazley confirmed it was defending Gateway under the Policy and identified no known reason to believe coverage might be denied. Among other things, the letter stated: "Given the limited facts currently known to us and in an abundance of caution, however, Underwriters must reserve all rights under the Policy, at law and in equity." Gateway accepted Beazley's defense and agreed to the appointed counsel.

14.     By August 11, 2011, Mr. Nast's counsel had requested Gateway's insurance information, and promised to provide Gateway's defense counsel "with information regarding [Mr. Nast's] medical bills as soon as I receive them from [the hospital]." Gateway's insurance

4

information was promptly provided. Mr. Nast's medical bills were not. Indeed, as of December 19, 2012, approximately a year and a half later, Mr. Nast's counsel still had not provided signed authorizations for release of medical records to Mr. Reuter, despite multiple written and verbal requests. Yet, as Mr. Reuter made clear, in light of Mr. Nast's unfortunate pre-existing condition, it was essential to obtain the records and bills both before and after the July 1, 2011 Incident in order to assess any asserted change in his condition as a result of that incident.

15. The Medical records authorizations were finally enclosed with a letter dated December 19, 2012, addressed directly to Gateway, in which Mr. Nast's counsel demanded $25,000,000 "or the limits of all of the applicable insurance policies" to settle Mr. Nast's claim. The letter stated that Mr. Nast's medical bills are in excess of $1,200,000 and that his future medical care and treatment (sometimes referred to as his "life care plan") will cost $9,934,200. The demand letter failed to address the Medicare or Medicaid liens associated with Mr. Nast's medical treatment. The letter said that the demand would remain open for the period of ninety-one days after the offer is received.

16. By January 25, 2013, Mr. Reuter finally had received the signed authorizations for release of medical records, and had begun the process of obtaining records from the fourteen or so different providers. On March 6, Mr. Reuter requested a 60-day extension of the demand's expiration date from Mr. Nast's counsel noting: "due to Mr. Nast's medical conditions, both prior to and since the July 1, 2011, incident made the basis of your claim, the medical records concerning his care and treatment are voluminous. We need additional time to continue to collect those records, organize them, and review them to achieve a reasonable evaluation of your claim for damage. [¶] Tom, Gateway Ambulance is taking your demand seriously, and simply would like sufficient time to adequately evaluate the facts made the basis of this claim to

5

4575410.2

appropriately respond to that demand." But Mr. Nast's counsel refused to extend the deadline by more than a few days, to April 3, 2013.

17. In the days leading up to the demand's April 3, 2013 expiration date, the information available to Beazley and Gateway included: (1) that the July 1, 2011 Incident resulted from the dangerous uneven pavement condition on the premises, for which Gateway had no responsibility; (2) that Mr. Nast's life care plan, making up the vast majority of Mr. Nast's claimed damages, almost entirely involved care related to Mr. Nast's pre-existing conditions or was otherwise not supported; (3) Mr. Nast's medical bills directly related to the July 1, 2011 incident reportedly totaled $1,153,397.00; yet, (4) Mr. Nast's medical bills were subject to payment by Medicare and Medicaid, with approximately $57,000 having been paid to date, and with the hospital claiming a right to $727,000 from Medicare (and billing Medicaid nothing in the meantime).

18. Beazley consulted with Gateway about the possibility of making a settlement offer, including in an April 1, 2013 email from Beazley to Gateway expressly seeking Gateway's input: "With the medicare numbers on appeal, I still find it too early to really assess case value. Also, it may be helpful to get a rated age for the plaintiff in order to determine whether an annuity would be appropriate. With that said, given the numbers he has given us, I would happily make an offer based on them but I do not know if that would be fruitful. What are your thoughts?"

19. On April 2, 2013, Mr. Reuter advised Mr. Nast's counsel that Gateway and its insurer were willing to try to sit down with him and resolve the claim, but with the liens unresolved, it was unknown how all parties could settle and effect a complete release:

> With the pendency of the appeal on a very significant part of the
> Saint Louis University Hospital bill, we cannot know what

6

> Medicare's final lien amount will be. Since Saint Louis University Hospital has not billed Medicaid, we also cannot know what their total lien amount will be. As you know, either of those entities can seek satisfaction of their liens against any of the parties to a settlement, if those liens are not satisfied directly with settlement proceeds. I do not know how we can resolve the claim at this point without knowing the specific amount that will be required to satisfy Medicare and Medicaid for their payments toward the medical expenses related to the incident made the basis of this suit.

Having received no proposed solutions or even suggestions from Mr. Nast's counsel to this conundrum, Mr. Reuter concluded: "We are not in a position at this point to respond to the settlement demand in your December 19, 2012, letter."

20. The foregoing was done with Gateway's informed involvement as Gateway agreed that the demand was unacceptable. Indeed, Gateway did not proffer its consent much less demand that Beazley settle.

21. Mr. Nast's counsel's only response came on April 12, 2013, when he asked if Gateway's counsel would accept service of a lawsuit against them and closed with: "I would like to sit down with the general counsel for Gateway Ambulance to discuss their insurer's failure to resolve this matter within the allotted time period."

22. On April 18, 2013 Nast's counsel filed suit naming Gateway its employees and Petre Construction LLC as defendants. Beazley through appointed counsel continued to defend the claim and to make reasonable efforts to resolve the claim, including encouraging an eventual mediation which occurred in June of 2014. However, Mr. Nast's counsel did not express any serious interest in negotiating a settlement and never provided any demand below $15 Million. Accordingly, despite Beazley's efforts, no opportunity to settle for an amount within the limits of the Policy was presented.

23. In correspondence dated June 20, 2014, Gateway revisited Beazley's early correspondence confirming its acceptance of the defense and, with reference to the general

7

4575410.2

reservation of rights language, stated: "If [Beazley] is suggesting that it has a basis to provide anything other than an unqualified defense and indemnity, subject to the policy limits, please advise immediately." Beazley did not dispute that it was affording an unqualified defense and indemnify, subject to the policy limits. Beazley agreed that there did not appear to be any Policy provision barring coverage under the known facts. *E.g.*, August 1, 2014 Email from Beazley to Gateway ("the reservation was general and not based on any policy language or exclusion. It was raised merely in the event that additional facts learned on the case triggered any exclusions or limitations. To date, that has not occurred and we are not raising any policy exclusions or limitations.")

24.     Therefore, Gateway had no cause to reject Beazley's defense and at all times, prior to June 8, 2015, Gateway accepted Beazley's defense. In fact, when Gateway indicated a desire that Beazley replace Mr. Reuter with other counsel, by letter dated September 23, 2014, Beazley agreed to do so. Based purely upon Gateway's stated preferences, Beazley replaced Mr. Reuter with Mr. Joseph Swift of the Brown & James Law firm..

25.     Accordingly, it came as a complete and utter surprise to Beazley when, on Monday June 8, 2015, Beazley was informed by Mr. Swift that he had been fired by Gateway, that Gateway had replaced him with other counsel, and that a proceeding designed to establish liability and damages had been set for that very same day. Mr. Swift further advised Beazley that he had been informed of this plan of June 5 before the weekend but had been specifically directed by Gateway not to reveal it to Beazley before Monday the day of the hearing.

26.     Given no time to investigate the circumstances or Gateway's basis for this action, besides issuing correspondence to Gateway's personal counsel objecting to Gateway's recent unilateral actions and insisting that Gateway restore control of the defense to Beazley (which

4575410.2

Gateway ignored), counsel for Beazley rushed to the courthouse to advise the trial court of the circumstances and made an oral motion to intervene and continue the hearing to allow Beazley with a reasonable opportunity to investigate and appropriately respond to these new developments. Counsel for Gateway and Plaintiff opposed the oral motion and informed Beazley's counsel that Gateway and its employees and Plaintiff had entered into a settlement agreement pursuant to Missouri Revised Statute Section 537.065. Attached hereto as Exhibit B. The settlement among other things provided that Plaintiff would never seek out any personal or other funds of any nature whatsoever from" Gateway, and Gateway expressly agreed among other things "not to cross examine Plaintiff's trial witnesses;" "not to offer any evidence at trial;" "not to file any post-trial motions after the Court enters judgment;" and "to waive the right to appeal any judgment entered by the Court ...."

27. Beazley's motion was denied and the hearing went forward on the afternoon of June 8, 2015. On June 9 the court entered an "Order and Final Judgment" awarding Mr. Nast a total of $24,915,604 against Gateway and its employee, Amie Wilson Lepsky. Attached hereto as Exhibit C.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF:
## (The Settlement and Resulting Uncontested Award/Judgment is not Enforceable Against Beazley and Cannot be Collected from Beazley under the Policy or Otherwise)
## Against All Defendants

28. Beazley incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

29. A justiciable controversy exists between Beazley and Defendants with respect to whether the June 8, 2015 settlement and the multi-million dollar uncontested award it generated,

or any portion thereof are binding on or otherwise collectible from Beazley, under the terms of the Policy or otherwise; thus, this matter is ripe for adjudication.

30. The settlement and resulting award are neither binding on Beazley nor otherwise collectible from Beazley for multiple reasons, including but not necessarily limited to the following reasons, and each of them:

    a. Gateway, Spangler and Lepsky's settlement with plaintiff under these circumstances constituted a material breach of the terms and conditions of the Policy and as a result these insureds forfeited any right to a defense or indemnity under the Policy.

    b. Beazley had a right under the Policy and applicable law to control the defense, with which defendants unreasonable interfered. *E.g.*, Policy Section B.1 ("The Underwriters shall have the right and duty to defend the **Insured** subject to the Limit of Liability, for any **Claim** first made against the **Insured** seeking payment under the terms of this insurance, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Underwriters shall choose defense counsel in conjunction with the **Insured**, but in the event of a dispute, the decision of the Underwriters is final.")

    c. Beazley did not breach its duty to defend and, having been deprived of its right to defend, cannot be bound to any liability, damages, or other determinations made in its absence.

    d. The Policy does not cover any voluntary disposition of a claim achieved without Beazley's consent. *E.g.*, Policy Section XII. ASSISTANCE AND CO-

4575410.2

OPERATION FO THE INSURED ("The **Insured** shall co-operate with the Underwriters in all investigations, including regarding the application and coverage under this Policy and upon the Underwriters' request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization other than an **Employee** of any **Insured** who may be liable to the **Insured** because of negligent acts, errors or omissions or **Accidents** with respect to which insurance is afforded under this Policy. The **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **Insured** shall not, except at its own cost, admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to any judgment or award or otherwise dispose of any **Claim** without the consent of the Underwriters.")

e.  The Policy prohibits any action to recover the Judgment against Beazley entered as a result of the settlement. *See*, Policy Section XIII. ACTION AGAINST THE UNDERWRITERS ("No action shall lie against the Underwriters unless, as a condition precedent thereto, there has been full compliance with all terms of this insurance, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment or award against the **Insured** after actual trial or arbitration or by written agreement of the **Insured**, the claimant and the Underwriters.")

f.  In whole or in part, the amount at issue does not actually arise out of any negligent act, error or omission of the **Insured** in rendering or failing to render

11

**Professional Services** for others, as required for coverage to exist under the Policy's Insuring Agreement.

g. The settlement agreement and resulting award was the result of a collusive and/or fraudulent denial of Beazley's rights.

h. The settlement agreement and/or resulting award are not reasonable.

i. Enforcing the settlement and resulting uncontested award/judgment against Beazley, or requiring Beazley to pay such amounts under the Policy or otherwise, would be unfair/inequitable, unlawful, unconstitutional, or contrary to the terms of the Policy, equity, and/or law.

31. Based upon the above facts and Policy language, Beazley contends that it is entitled to and seeks a judicial declaration that the settlement and resulting award/judgment is not enforceable against Beazley or collectible from Beazley under the terms of the Policy or otherwise.

## SECOND CAUSE OF ACTION FOR BREACH OF CONTRACT
### Against Gateway

32. Beazley incorporates by reference paragraphs 1 through 32 as if fully set forth herein.

33. Beazley has at all times complied with all of its obligations under the Policy, except as to any excused.

34. Gateway has inexcusably breached the Policy, including but not necessarily limited to the following ways:

a. Beazley had a right under the Policy and applicable law to control the defense, which Gateway accepted; yet Gateway secretly and unilaterally assumed

control of the claim without good cause or notice. *E.g.*, Policy Section B.1 ("The Underwriters shall have the right and duty to defend the **Insured** subject to the Limit of Liability, for any **Claim** first made against the **Insured** seeking payment under the terms of this insurance, even if any of the allegations of the **Claim** are groundless, false or fraudulent. The Underwriters shall choose defense counsel in conjunction with the **Insured**, but in the event of a dispute, the decision of the Underwriters is final.")

b.  Not only did Gateway improperly assume control of the defense without cause, but then Gateway failed and refused to defend the claim and, instead, agreed to a voluntary disposition of the claim involving an uncontested proceeding without Beazley's consent (or even knowledge). *E.g.*, Policy Section XII. ASSISTANCE AND CO-OPERATION FO THE INSURED ("The **Insured** shall co-operate with the Underwriters in all investigations, including regarding the application and coverage under this Policy and upon the Underwriters' request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization other than an **Employee** of any **Insured** who may be liable to the **Insured** because of negligent acts, errors or omissions or **Accidents** with respect to which insurance is afforded under this Policy. The **Insured** shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The **Insured** shall not, except at its own cost, admit liability, make any payment, assume any obligations, incur any expense, enter into any settlement, stipulate to

13

any judgment or award or otherwise dispose of any **Claim** without the consent of the Underwriters.")

c. In addition to breaching express contract terms such as those set forth above, Gateway violated the implied covenant of good faith and fair dealing by engaging in the aforementioned conduct, depriving Beazley of its right to control the defense and pursue a result within Policy limits while, simultaneously, working together with the underlying plaintiff in a secret and deliberate effort to achieve a result that would not have resulted if Gateway had acted in good faith.

35. As a proximate result of Gateway's breach of contract, Beazley has and will continue to suffer losses and damages, including financial losses, attorneys' fees and costs, damage to reputation, delay, annoyance and inconvenience, for all of which Gateway is liable. By way of example, if and to the extent demand is made on Beazley to pay any part of the uncontested award/judgment caused by Gateway's breach of its insurance contract with Beazley, all such amounts and all related amounts should properly be chargeable to Gateway as damages resulting from its breach.

WHEREFORE, Beazley demands judgment against Defendants as may be ultimately appropriate in this matter, including a judicial declaration that the settlement and uncontested award/judgment is not binding on Beazley and is not collectible from Beazley under the Policy or otherwise, and for compensatory damages for Gateway's breach of the contract, and for such further relief as the Court may deem just and proper.

Dated this 11th day of June, 2015.

4575410.2

BRYAN CAVE

By:   /s/ Dennis E. O'Connell
     Dennis E. O'Connell, #21037MO
     One Metropolitan Square
     211 North Broadway, Suite 3600
     St. Louis, Missouri 63102-2750
     deoconnell@bryancave.com
     Phone: (314) 259-2208
     Fax:   (314) 552-8208

*Attorneys for Plaintiffs Certain Underwriters at Lloyd's, London ("Beazley")*