UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BEAZLEY FURLONGE LTD on Behalf Of CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, doing Business as Syndicate 2623 and BEAZLEY UNDERWRITING LTD., | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | Case No. 4:15CV918 JCH |
| GATEWAY AMBULANCE SERVICE, LLC, AMIE WILSON LEPSKY, DAVID SPALINGER, and JAN H. FREEMAN, Individually and as Personal Representative of JEAN ROBERT NAST, | ) ) ) ) ) ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss, filed July 14, 2015. (ECF No. 13). The motion is fully briefed and ready for disposition.

## BACKGROUND[1]

Plaintiff Beazley Furlonge LTD is the Managing Agency for Syndicate 2623 at Lloyd's, London, and Plaintiff Beazley Underwriting Ltd. is the sole member of Syndicate 2623. (First Amended Complaint ("FAC"), ¶ 1).[2] Beazley issued a Miscellaneous Medical Professional Liability Policy to PROCARENT f/k/a Louisville Transportation Company, in Louisville, Kentucky, with a policy period from October 1, 2010, to October 1, 2011 (the "Policy"). (*Id.*, ¶ 9). By endorsement to

---

1 The Court's background section is taken primarily from Plaintiffs' First Amended Complaint, to which Defendants have not filed an Answer.
2 Plaintiffs collectively are referred to as "Beazley" or "Underwriters."

the Policy, Defendant Gateway Ambulance Service, LLC is a Named Insured. (*Id.*). The Policy provides a Limit of Liability of $1,000,000 per claim, inclusive of defense attorney's fees and costs. (*Id.*).

On July 1, 2011, 26-year-old quadriplegic Jean Robert Nast was transported from Saint Louis University Hospital to his home by Gateway Ambulance. (FAC, ¶ 11). On that day, the lift attached to his home and used to transport him in and out of the building was not functioning, and/or his caretaker was unable to operate it. (*Id.*). In the course of attempting to operate the lift Gateway's personnel moved Mr. Nast's stretcher, and the wheels encountered an uneven surface. (*Id.*). The stretcher tipped over, and Mr. Nast was injured and immediately transported back to Saint Louis University Hospital by Gateway personnel. (*Id.*).

Beazley was notified of the July 1, 2011, incident on July 6, 2011. (FAC, ¶ 13). In correspondence dated July 21, 2011, Beazley confirmed it was defending Gateway under the Policy, and identified no known reason to believe coverage might be denied. (*Id.*). The letter did state that, "[g]iven the limited facts currently known to us and in an abundance of caution, however, Underwriters must reserve all rights under the Policy, at law and in equity." (*Id.*).

In a letter dated December 19, 2012, Mr. Nast's counsel demanded $25,000,000, "or the limits of all of the applicable insurance policies" to settle Mr. Nast's claim. (FAC, ¶ 15). The letter stated that Mr. Nast's medical bills were in excess of $1,200,000, and that his future medical care and treatment would cost $9,934,200. (*Id.*). The letter further stated that the demand would remain open for a period of ninety-one days after the offer was received. (*Id.*). Beazley and Gateway's attorney requested a 60-day extension of the demand's expiration date, but Mr. Nast's counsel agreed only to extend the deadline to April 3, 2013. (*Id.*, ¶ 16).

On April 18, 2013, Mr. Nast's counsel filed suit, naming as defendants Gateway, its employees, and Petre Construction, LLC.[3] (FAC, ¶ 22). Through appointed counsel, Beazley continued to defend and to make efforts to resolve the claim, and further reassured Gateway that it was affording an unqualified defense and indemnity, subject to the Policy limits. (*Id.*, ¶¶ 22, 23). When Gateway requested in or around September, 2014, that Beazley replace their chosen counsel, Beazley agreed and engaged Mr. Joseph Swift of the Brown & James Law Firm. (*Id.*, ¶ 24).

On Monday, June 8, 2015, Mr. Swift informed Beazley that he had been fired by Gateway, that Gateway had replaced him with other counsel, and that a proceeding designed to establish liability and damages had been set for that day. (FAC, ¶ 25). Counsel for Beazley rushed to the courthouse to advise the trial court of the circumstances, and made an oral motion to intervene and continue the hearing. (*Id.*, ¶ 26). Counsel for Gateway and Mr. Nast opposed the oral motion, and informed Beazley's counsel that Gateway, its employees and Mr. Nast had entered into a settlement agreement pursuant to Missouri Revised Statute Section 537.065. (*Id.*). The settlement provided, among other things, that Mr. Nast would never seek out any personal or other funds from Gateway, and that Gateway would not cross examine Mr. Nast's trial witnesses, offer any evidence at trial, file any post-trial motions after the Court entered judgment, or appeal any judgment entered by the Court. (*Id.*).

Beazley's motion to intervene and continue the hearing was denied, and the hearing went forward on the afternoon of June 8, 2015. On June 9, 2015, the Circuit Court for the City of St. Louis, Missouri, entered an "Order and Final Judgment," awarding Mr. Nast a total of $24,915,604, against Gateway and its employee, Defendant Amie Wilson Lepsky. (*Id.*, ¶ 27). That same day, Mr. Nast filed an equitable garnishment action and claim for bad faith in the Circuit Court for the City of

---

3 Petre Construction installed the lift used to facilitate Mr. Nast's ingress and egress from his home. (Plaintiffs'

St. Louis. (Memorandum in Support of Defendants' Motion to Dismiss ("Defendants' Memo in Support"), P. 2).

Beazley filed its original Complaint in this matter on June 11, 2015. (ECF No. 1). Named as Plaintiff in that Complaint was "Beazley Furlonge LTD, on behalf of Certain Underwriters at Lloyd's, London, doing business as Syndicates 623 and 2623." Beazley filed its First Amended Complaint on July 1, 2015, naming as Plaintiffs "Beazley Furlonge LTD, on behalf of Certain Underwriters at Lloyd's, London, doing business as Syndicate 2623, and Beazley Underwriting Ltd." (ECF No. 7). Syndicate 623 is not mentioned in Beazley's First Amended Complaint.

In its First Amended Complaint, Beazley's first cause of action is for declaratory relief as to all Defendants. (FAC, ¶¶ 28-31). With this claim, Beazley alleges the settlement and resulting award are neither binding on nor otherwise collectible from Beazley for multiple reasons, and thus seeks a declaration as follows:

  a. Gateway, Spangler (sic) and Lepsky's settlement with [Nast] under these circumstances constituted a material breach of the terms and conditions of the Policy, and as a result these insureds forfeited any right to a defense or indemnity under the Policy;

  b. Beazley had a right under the Policy and applicable law to control the defense, with which defendants unreasonably interfered (citing Policy Section B.1);

  c. Beazley did not breach its duty to defend and, having been deprived of its right to defend, cannot be bound to any liability, damages, or other determinations made in its absence;

  d. The Policy does not cover any voluntary disposition of a claim achieved without Beazley's consent (citing Policy Section XII);

  e. The Policy prohibits any action to recover the Judgment against Beazley entered as a result of the settlement (citing Policy Section XIII);

---

Opposition to Defendants' Motion to Dismiss ("Plaintiffs' Opp."), P. 4).

      f.   In whole or in part, the amount at issue does not actually arise out of any negligent act, error or omission of the Insured in rendering or failing to render Professional Services for others, as required for coverage to exist under the Policy's Insuring Agreement;

      g.   The settlement agreement and resulting award was the result of a collusive and/or fraudulent denial of Beazley's rights;

      h.   The settlement agreement and/or resulting award are not reasonable; and

      i.   Enforcing the settlement and resulting uncontested award/judgment against Beazley, or requiring Beazley to pay such amounts under the Policy or otherwise, would be unfair/inequitable, unlawful, unconstitutional, or contrary to the terms of the Policy, equity, and/or law.

(*Id.*, ¶ 30). Beazley's second cause of action is for breach of contract, against Defendant Gateway only. (*Id.*, ¶¶ 32-35). With this claim, Beazley alleges Gateway breached the Policy in numerous ways, including but not limited to the following:

      a.   Beazley had a right under the Policy and applicable law to control the defense, which Gateway accepted; yet Gateway secretly and unilaterally assumed control of the claim without good cause or notice (citing Policy Section B.1);

      b.   Not only did Gateway improperly assume control of the defense without cause, but then Gateway failed and refused to defend the claim and, instead, agreed to a voluntary disposition of the claim involving an uncontested proceeding without Beazley's consent (or even knowledge) (citing Policy Section XII); and

      c.   In addition to breaching express contract terms such as those set forth above, Gateway violated the implied covenant of good faith and fair dealing by engaging in the aforementioned conduct, depriving Beazley of its right to control the defense and pursue a result within Policy limits while, simultaneously, working together with the underlying plaintiff in a secret and deliberate effort to achieve a result that would not have resulted if Gateway had acted in good faith.

(*Id.*, ¶ 34).

    As noted above, Defendants filed the instant Motion to Dismiss on July 14, 2015, claiming Beazley's First Amended Complaint must be dismissed because there is not complete diversity between the parties, because Syndicate 623 is an indispensable party, and because the same parties, issues, and law are involved in a previously filed state court action. (ECF No. 13).

**STANDARD FOR MOTION TO DISMISS**

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The complaint's factual allegations must be sufficient "to raise a right to relief above the speculative level," however, and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

**DISCUSSION**

**I.  Is Syndicate 623 An Indispensable Party To This Action, And If So, Would Requiring Its Presence Destroy Diversity Jurisdiction?**

In their motion Defendants first assert Beazley's First Amended Complaint must be dismissed for lack of subject matter jurisdiction, as complete diversity does not exist between the parties. (Defendants' Memo in Support, PP. 3-9). In so asserting, Defendants seemingly acknowledge diversity is present on the face of Beazley's First Amended Complaint.[4] Defendants

---

4 According to Beazley, Beazley Furlonge LTD and Beazley Underwriting Ltd. are incorporated in England and Wales, with principal offices in London, United Kingdom, Gateway is a Kentucky limited liability company whose

nevertheless maintain jurisdiction does not exist, as Syndicate 623 is an indispensable party under Federal Rule of Civil Procedure 19, and its presence would destroy diversity.[5] (*Id.*, PP. 9-11).

Consideration of Defendants' argument requires a brief overview of the structure of Lloyd's of London, which "is typically understood to be not a single entity but a number of underwriters involved in the Lloyd's of London insurance market." *Ayuso v. Certain Underwriters at Lloyd's of London*, 2013 WL 4854742, at *3 (E.D. Mo. Sep. 11, 2013).

> Lloyd's is an association that provides the physical premises and the administrative services and staff to enable insurance underwriters to carry on their business. Lloyd's is not an insurance company, but rather is an exchange or market where various individuals or groups bid on the right to insure a given risk. Lloyd's takes no part in the business of underwriting; policies are underwritten at Lloyd's and not by Lloyd's.
>
> An individual must pay a membership fee, keep certain deposits at Lloyd's, and meet several specific requirements, including possession of a certain degree of wealth, in order to have access to the Lloyd's insurance market. Once they have joined the market, these individuals may underwrite risks in this market. The individuals are alternatively referred to as members, underwriters, or names. In order to increase the efficiency of underwriting risks and to combine the resources of numerous individuals, names form groups called syndicates. However, syndicates are not legal entities. Syndicates do not assume liability or underwrite risks; names do. Each name has unlimited personal liability yet only to the extent of the percentage share of the risk that he or she has assumed. The holders of Lloyd's policies thus enter into contractual relationships with specific names who have subscribed to the policy for the portion of the risk each name has agreed to underwrite.
>
> Within each syndicate, a Managing Agent is responsible for the underwriting and management of each individual's investments. The Managing Agent receives this authority through contracts with each individual. The Managing Agent, typically a partnership or limited company, appoints one of its employees to serve as the Active Underwriter for the syndicate. The Active Underwriter has the authority to bind all the individuals in the syndicate. The Active Underwriter selects the risks to underwrite, determines the conditions to which a risk will be subject, assigns each individual in the syndicate a percentage of the risk, and decides whether to pay a particular claim.

*Chemical Leaman Tank Lines, Inc. v. Aetna Cas. and Sur. Co.*, 177 F.3d 210, 221-22 (3rd Cir. 1999).

---

members are residents of Kentucky, and whose principal place of business is in Kentucky, and Lempsky, Spalinger and Freeman are all citizens of Missouri. (FAC, ¶¶ 1-5).

5 Syndicate 623 secures 19% of the Policy, and thus according to Defendants, it has a financial interest in the subject of the litigation and is an indispensable and interested party to this action. (Defendants' Memo in Support, P. 9).

˘ 7 ˘

Within the context of this framework, the United States Court of Appeals for the Second Circuit considered whose citizenship must be plead in suits involving Lloyd's of London, and held as follows:

> [W]hen a Lloyd's lead underwriter is sued[6] in a representative capacity (but not in a class action) each and every Name whom the lead underwriter represents must be completely diverse. But….when a Lloyd's Name (including a lead underwriter) is properly sued only in an individual capacity, it is that Name's characteristics, both as to citizenship and jurisdictional amount, that are determinative for jurisdictional purposes. And the fact that other Lloyd's underwriters who are not diverse parties in the suit may be bound by the result of the suit (whether by contract or by preclusion) is of no consequence.

*E.R.Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 939-40 (2nd Cir. 1998). Other courts have reached the same conclusion. *See, e.g.*, *Corfield*, 355 F.3d at 863-64 (finding the Second Circuit's approach in *Squibb* to be "based upon sound reasoning", and holding that "[t]he fact that other parties are bound by a judgment against one obligor….is insufficient to bring their citizenship into consideration when they are not parties to the suit."); *Chemical Leaman*, 177 F.3d at 223 n. 16 (citations omitted) ("According to the terms of the Lloyd's policies, the names are liable 'each for his own part and not one for another.' Thus, while the absent names would be proper parties to this suit, they are not necessary parties. Complete relief may be accorded to those already parties to the action without impairing or impeding the absent names' ability to protect their interests and without subjecting any party to multiple or otherwise inconsistent obligations.").

Upon consideration, the Court finds the case before it presents a hybrid situation. In other words, while Beazley is suing in its representative capacity, thus putting at issue the citizenship of its various members, it is suing on behalf of only Syndicate 2623. Defendants posit that because Beazley also acts as the managing agent for Syndicate 623, it must plead the citizenship of all

---

Further, while Defendants acknowledge the citizenship of the members of Syndicate 623 is unknown (*Id.*, P. 10), Beazley does not dispute that its presence as a party would destroy diversity.

members of that Syndicate as well. (Defendants' Reply Memorandum of Law in Further Support of their Motion to Dismiss ("Defendants' Reply"), P. 7). Defendants provide no case law in support of their position, however, and the Court finds it is not well-taken. *See, e.g., Chemical Leaman*, 177 F.3d at 223 n. 16 ("Moreover, we perceive no reason why Chemical Leaman should not be entitled to sue less than all of the names if it so chooses."). Thus, because Syndicate 623 is not an indispensable party to this action, and complete diversity exists among the named parties, this portion of Defendants' Motion to Dismiss will be denied.

## II. Should The Instant Suit Be Dismissed In Favor Of The Previously Filed State Court Action?

As noted above, two days before the instant suit was filed Mr. Nast filed an equitable garnishment action in Missouri state court, in which he sued Certain Underwriters at Lloyd's, Lloyds of London, Subscribing to Policy of Insurance No. W15LTV100201, Beazley Insurance, d/b/a Beazley Group, Gateway Ambulance Service, LLC, and Amie Wilson Lepsky. (ECF No. 14-3). In Count I of his Petition, Mr. Nast alleges that the Policy contractually obligated Beazley both to defend and to indemnify Defendants Gateway and Wilson against Plaintiff Nast's bodily injury claim; that the Policy was in force on the day Mr. Nast was injured by what he alleged to be the negligent acts of Defendants Gateway and Wilson; that Beazley neither has, nor ever had, a valid policy defense excusing it from providing liability coverage under the Policy for the bodily injury claim asserted by Mr. Nast; and that despite its obligation, Beazley failed to defend or indemnify Defendants Gateway and Wilson against the claim. (*Id.*, ¶¶ 22-24). Plaintiff Nast thus asserts he is entitled to judgment against Beazley in the amount of the judgment covered by the Policy. (*Id.*, ¶

---

6 The *Squibb* analysis applies equally to suits brought by Lloyd's of London. *See, e.g., Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (5th Cir. 2003); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079 (11th Cir. 2010).

27). In Count II of his Petition, Mr. Nast asserts a bad faith refusal to settle claim against Beazley. (*Id.*, ¶¶ 28-35).

In their Motion to Dismiss, Defendants contend the instant suit must be dismissed, as the state and federal actions present the same issues, governed by state law, between the same parties. (Defendants' Memo in Support, P. 13). Specifically, Defendants state as follows:

> The issue in both actions is a dispute over Lloyd's rights and duties under the policy, and whether Lloyd's breached its good faith duty to settle. The garnishment action is seeking coverage for the judgment under the insurance policy, and the declaratory judgment action is seeking a determination there is no coverage.

(*Id.*).

As an initial matter, Defendants assert that because Beazley's suit is one under the Declaratory Judgment Act, in determining whether to abstain in favor of the state court proceeding the Court must apply the more lenient standard articulated in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). (Defendants' Memo in Support, PP. 11-15). Beazley counters that the "exceptional circumstances" test articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) should govern the Court's abstention analysis, because Beazley's First Amended Complaint contains a claim for breach of contract in addition to the request for declaratory relief. (Plaintiffs' Opp., PP. 10-15). Upon consideration the Court finds it need not decide this issue, as abstention is warranted even under the more stringent *Colorado River* analysis.

The Eighth Circuit explained the *Colorado River* standard in *Mountain Pure, LLC v. Turner Holdings, LLC*, as follows:

> Federal courts have a "virtually unflagging obligation…to exercise the jurisdiction given them," *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236, even when there is a pending state court action involving the same subject matter, *id.* at 813-14, 817, 96 S.Ct. 1236. "Abdication of the obligation to decide cases can be justified under [the abstention] doctrine[s] only in the *exceptional circumstances* where the order to the parties to repair to

the State court would clearly serve an important countervailing interest." *Moses H. Cone [Mem. Hosp. v. Mercury Constr.*, 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)] (quoting *Colorado River*, 424 U.S. at 813, 96 S.Ct. 1236 (internal quotation and citation omitted) (emphasis added).

Determining whether exceptional circumstances exist requires evaluation of the following factors (the *Colorado River/Moses H. Cone* factors).

> (1) Whether there is a res over which one court has established jurisdiction, 2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority—not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.

*[United States Fid. & Guar. Co. v. Murphy Oil USA*, 21 F.3d 259, 263 (8th Cir. 1994)].

These factors are not intended to be exhaustive, nor are they mechanically applied. Rather, they are pragmatically applied to advance the "clear federal policy" of avoiding piecemeal adjudication. *Moses H. Cone*, 460 U.S. at 16, 21, 103 S.Ct. 927. When examining the factors, "the balance [is] heavily weighted in favor of the exercise of jurisdiction." *Id.* at 16, 103 S.Ct. 927.

*Mountain Pure, LLC v. Turner Holdings*, 439 F.3d 920, 926 (8th Cir. 2006). Bearing these instructions in mind, the Court turns to consideration of the *Colorado River/Moses H. Cone* factors to determine whether abstention is warranted in this case.

The Court finds factors one and two have no relevance here.[7] *See USF & G*, 21 F.3d at 263. As to factor three, whether maintaining separate actions will result in piecemeal litigation, "Supreme Court cases make it clear that this is the predominant factor." *Federated Rural Elec. Ins. Corp. v. Arkansas Elec. Cooperatives, Inc.*, 48 F.3d 294, 297 (8th Cir. 1995) (citing *Moses H. Cone*, 460 U.S. at 16, 21, 103 S.Ct. at 937, 939-40). "The policies underlying *Colorado River* abstention are

---

7 Beazley notes this case does not involve any *res* or property over which any court, state or federal, has taken control, and the federal and state courts are located in approximately the same geographic location within the state. (Plaintiffs' Opp., P. 11).

'considerations of '[w]ise judicial administration,' giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Id.* at 297-98 (citations omitted). The Eighth Circuit continued as follows:

> Our cases have advanced this policy by favoring the most complete action. *See, e.g., USF & G*, 21 F.3d at 263 (state action, unlike federal action, included "all parties in a declaratory judgment action involving multiple insurers and overlapping coverage" and federal action stayed); *Employers Ins. Of Wausau v. Missouri Elec. Works*, 23 F.3d 1372, 1375 (8th Cir. 1994) (in dispute with two insurers, federal action against one insurer stayed to allow state action involving both insurers to proceed).
>
> As we noted in a similar case, "the interest of an insured in binding as many of its insurers as possible to a single adjudication is a factor strongly weighing in favor of maintenance of an inclusive action." *Insurance Co. of the State of Penn v. Syntex*, 964 F.2d 829, 834-35 (8th Cir. 1992). The same principle that led us in *Syntex* to disapprove of the strategic omission of nondiverse insurers to create diversity applies with equal force to the strategic splitting of a cause of action by omitting policies to defeat diversity.

*Id.* at 298 (footnote omitted); *see also Mountain Pure*, 439 F.3d at 927.

Upon consideration of the foregoing, the Court finds factor three weighs heavily in favor of abstention. As noted above, Syndicate 623 secures 19% of the Policy, but presumably cannot be made a party to this action as its presence would destroy diversity. The Court disapproves of Beazley's apparent "strategic omission" of the nondiverse insurer[8], and thus factor three weighs in favor of continuation of the most complete action, Mr. Nast's state equitable garnishment action.

With respect to factor four, which case has priority, the Court finds such factor neutral. In other words, while Beazley has filed a motion for partial summary judgment in this case, albeit prematurely according to Defendants[9], discovery has begun in the state action. (Defendants' Reply, P. 11). With respect to factor five, whether state or federal law controls, the Court finds this action is

---

8 Again, although the citizenship of the members of Syndicate 623 is unknown, the Court finds it telling that Beazley omitted all reference to the group in its First Amended Complaint, and further did not address the citizenship issue in its response to Defendants' motion.
9 The Court notes Beazley's Motion for Partial Summary Judgment was filed at an unusually early point in the litigation, before the conduct of any discovery or even the filing of an Answer or entry of a Case Management Order.

governed by state law.[10] Finally, while Beazley argues that factor six is important here, and supports the exercise of federal jurisdiction, the Court finds no evidence that Beazley would not receive a fair hearing in state court, or that the state court "is biased or otherwise inadequate to protect the federal plaintiff's rights." *USF & G*, 21 F.3d at 263.

Based on the foregoing, the Court finds exceptional circumstances warrant abstention from the exercise of jurisdiction in this matter at this time. The Court concludes the case should be stayed rather than dismissed, however. "[W]here the basis for declining to proceed is the pendency of a state proceeding, a stay will often be the preferable course, because it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *State Farm Fire and Cas. Co. v. Pit Stop Bar and Grill, LLC*, 2015 WL 4663492, at *4 (E.D. Mo. Aug. 6, 2015) (internal quotations and citations omitted). To the extent Beazley believes that its claims remain unresolved at the conclusion of the state court action, it may seek to pursue them in this Court. *Id.*

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 13) is **GRANTED** in part, and this case is **STAYED** until further order of the Court.

**IT IS FURTHER ORDERED** that all other pending motions (ECF Nos. 21, 23, 24) are **DENIED** without prejudice to refiling in the event the stay of this action is lifted.

---

10 While Beazley does allege in its First Amended Complaint that enforcing the settlement and resulting uncontested award/judgment against it would be unconstitutional (*see* FAC, ¶ 30.1), it offers no explanation as to how Constitutional issues would be implicated here, and the Court does not find that Plaintiffs' single unsupported reference militates against abstention.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall administratively close this case, which may be reopened on the motion of any party. Any motion to reopen shall include a statement of all relevant proceedings that have occurred in the equitable garnishment action in the Circuit Court for the City of St. Louis, Missouri.

Dated this 9th Day of September, 2015.

    /s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE